UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SWETLIC CHIROPRACTIC &
REHABILITATION CENTER, INC.,** *et al.***,**

      **Plaintiffs,**

  v.                                  Case No.: 2:16-cv-236
                                         JUDGE SMITH
                                         Magistrate Judge Deavers

**FOOT LEVELERS, INC.,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court upon Plaintiff Swetlic Chiropractic & Rehabilitation Center's "Placeholder" Motion for Class Certification ("Placeholder Motion") (Doc. 3). Defendant Foot Levelers, Inc. responded in opposition to the Placeholder Motion (Doc. 17) and Plaintiff replied in support (Doc. 21). Also before the Court is Defendant Foot Leveler, Inc.'s Motion to Stay the Case, or Alternatively to Dismiss the Complaint and Strike the Class Definition (Doc. 18). Plaintiff opposed Defendant's Motion and requested leave to amend the Complaint (Doc. 24) while Defendant replied in support (Doc. 27). Last, both Plaintiff and Defendant filed notices of Supplemental Authority (Docs. 31 and 32). These matters are now ripe for review. For the following reasons, Defendant's various requests for relief are **DENIED**, Plaintiff's request for leave to amend the Complaint is **GRANTED**, and the Court reserves judgment on the Plaintiff's Placeholder Motion.

### I.    BACKGROUND

This lawsuit arises out of allegedly unsolicited faxes sent by Foot Levelers and John Doe Defendants ("Defendants") to Swetlic Chiropractic and Rehabilitation Center, Inc. ("Swetlic").

Swetlic alleges Defendants violated the Telephone Consumer Protection Act ("TCPA") as amended by the Junk Fax Prevention Act when Defendants sent advertising faxes without insufficient opt-out notices or without prior express invitation or permission by the recipients.

Swetlic alleges that it received three unsolicited faxes in 2014 from Defendants on May 19, May 27, and June 2. (Doc. 1, Compl. at ¶ 11). The May faxes appear to be relatively straightforward advertisements for stabilizing orthotics available for sale. (Doc. 1-1, Faxes at 2–3). However the June fax is advertising a free webinar and gives information on receiving free promotional material for Foot Levelers and a giveaway contest for an iPad Air and a Michael Kors clutch. (*Id.* at 4). Both the giveaway and the registration for the webinar direct interested parties to the Foot Levelers website and the free promotional material directs interested parties to contact Foot Levelers' Customer Service department. (*Id.*).

Swetlic alleges that at least twenty five other recipients received these and other faxes without permission. (*Id.* at ¶ 14). Swetlic specifically alleges that the first fax did not display a proper opt-out notice but then later also alleges that all three faxes failed to comply with the opt-out notice requirements. (*Id.* at ¶¶ 14, 29). Swetlic alleges that these faxes caused damages including the loss of paper, toner, and the use of fax machine lines. (*Id.* at ¶ 34). Swetlic also alleges that it lost time "receiving, reviewing and routing the Defendants' unauthorized faxes." (*Id.*). Last, Swetlic alleges that the faxes imposed on Swetlic's privacy interests. (*Id.*).

Swetlic filed the Placeholder Motion at the same time it filed its Complaint in this case. Foot Levelers filed a Motion to Stay the case pending the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, 578 U.S. \_\_\_\_, 136 S.Ct. 1540 (2016) because *Spokeo* may be decisive in determining whether Swetlic has standing to pursue this action. Foot Levelers also moves for dismissal of all of the claims and asks this Court to strike the class definition as an improper "fail-safe" class.

## II. DISCUSSION

Defendant's Motion to Stay asked the Court to stay the case pending the Supreme Court's resolution of *Spokeo, Inc. v. Robins*. Because the Supreme Court's ruling is now published, Defendant's Motion to Stay is **DENIED as moot**. In addition, Defendant moved for dismissal of all of Swetlic's claims under 12(b)(6) for failing to identify how Foot Levelers violated the TCPA toward Swetlic, to dismiss all claims relating to the June fax because it is not an advertisement, and to strike the class definition.

Before addressing *Spokeo's* effect on Swetlic's standing in this case, it is important to clarify which claims in the Complaint are brought by Swetlic. Foot Levelers originally argued that Swetlic's Complaint did not specifically address how Foot Levelers violated the TCPA. However, Foot Levelers did not respond to Swetlic's argument on this point. Swetlic argued that notice pleading does not require a theory of liability and that Defendant cited no authority requiring a detailed theory of liability. (Doc. 24, Mem. Opp. at 1, 16). Even though Swetlic's reference to notice pleading is inconsistent with *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court agrees with Swetlic that a detailed and singular theory of liability is not required. Swetlic is alleging that Defendants sent unsolicited faxes, or alternatively, that the faxes lacked a proper opt-out, or both:

> Defendants sent on or about May 19, 2014, May 27, 2014 and June 2, 2014, advertisements and any other advertisements sent to Plaintiff . . . to the telephone lines and facsimile machines of Plaintiff . . . . The Faxes were transmitted to persons or entities without their prior express permission or invitation **and/or** Defendants are precluded from asserting any prior express permission or invitation or that Defendants had an established business relationship with Plaintiff . . . because of the failure to comply with the Opt-Out Notice Requirements.

(Doc. 1, Compl. at ¶ 29 (emphasis added); *see also* ¶¶ 11, 14, 16). The Complaint is clear that Swetlic is alleging alternative bases of liability, a litigation strategy explicitly authorized under

the Federal Rules of Civil Procedure and the Sixth Circuit. Fed R. Civ. P. 8(d)(3)) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 711 (6th Cir. 2006) ("Parties may, of course, plead alternative theories of liability."). Accordingly, Foot Levelers's Motion to Dismiss the Complaint for lack of specificity under Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED**. The Court will address each remaining argument in turn.

## A. Standing

Although Foot Levelers only moved to stay the case as opposed to moving for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court will now consider whether Swetlic has standing. Both parties offered arguments on the issue of standing in their responses to the Foot Leveler's Motion to Stay. This is appropriate because standing is "the threshold question in every federal case," and if the plaintiff lacks standing, the federal court lacks jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.*

Standing under Article III has three elements. "First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (Internal alterations omitted). Third, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 561. The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). Last, each element of

4

standing must be supported with the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561.

For an injury to be cognizable under current standing doctrine, it must be particularized meaning it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. ____, 7, 136 S.Ct. 1540 (2016) (internal quotations omitted). Additionally, the injury must be concrete, meaning it must actually exist and must be real and not abstract. *Id.* at 8 (quoting Webster's Third New Int'l Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)). However, the injury need not necessarily be tangible. *Id.* at 8–9 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Spokeo*, 578 U.S. at 9 (quoting *Lujan*, 504 U.S. at 578). However, this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Specifically, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 9–10.

Foot Levelers argues that both of Plaintiff's alternative theories of liability lack standing. Foot Levelers argues that the unsolicited fax claims have an injury that is vague and *de minimis* such that the injuries are not concrete. Foot Levelers also argues that Swetlic had the power to stop the faxes by using the provided opt-out and thus, eliminate the injury. As for the claims based on the lack of statutorily required opt-out language, Foot Levelers argues that these faxes could not have caused a traceable harm because such a claim presupposes that Foot Levelers had permission to send advertising faxes, but only failed to include more robust opt-out language.

5

The Court will address both the unsolicited faxes and those which were allegedly permitted but lacked the proper opt-out language.

1. **Unsolicited Faxes**

Although the Sixth Circuit has not had an opportunity to consider a similar case since the Supreme Court's decision in *Spokeo*, in *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, decided before *Spokeo*, the Sixth Circuit found that the TCPA "gives recipients of unsolicited fax advertising the legal right to recover damages and obtain injunctive relief from the senders of those faxes." *Imhoff*, 792 F.3d 627, 633 (6th Cir. 2015).  In considering unsolicited advertisements, the Sixth Circuit held that "viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily-created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements."  *Id.*

The Eastern District of Michigan recently had the opportunity to analyze *Imhoff* in the aftermath of *Spokeo*.  *Compressor Eng'g Corp. v. Thomas*, No. 10-10059, 2016 WL 7473448 (E.D. Mich. Dec. 29, 2016).  In *Compressor*, the plaintiff alleged it received a single fax from the defendant, did not recall receiving the fax, did not keep the fax, did not keep the fax machine, and did not have the transmission log showing receipt of the fax.  *Id.* at *4.  Importantly, it was undisputed that the defendant did not receive permission to send the fax.  *Id.*  Finding that *Imhoff* is consistent with *Spokeo*, the court held that the plaintiff had standing because he "evidenced a 'concrete' injury of an 'occupied' fax or telephone line that is not merely a 'procedural harm divorced' from a concrete injury," and that "the injury is 'particularized' as to Plaintiff and the proposed class because they are alleged 'recipients' of the offending fax advertisement."  *Id.* at *10.  This Court agrees with the *Compressor* court that the receipt of an impermissible fax constitutes a concrete and particularized injury under *Imhoff* and *Spokeo*.

Foot Levelers also argues that there is no harm in this case because the opt-out language in the faxes offered Swetlic a way to eliminate the injury that was within Swetlic's control. (Doc. 27, Mot. to Stay Reply at 5). Foot Levelers cites a footnote from *Lujan*, stating that if there is "a mechanism to eliminate the injury that was 'at least partly within the plaintiff's own control,'" there is no standing. (*Id.* (citing *Lujan*, 504 U.S. at 564 n.2). This argument and its quotation of *Lujan* are red herrings. The quote in *Lujan* is not referring to actual injuries—*i.e.* an injury which has already occurred—as alleged in this case. *Lujan*, 504 U.S. at 564 n.2. The quote in *Lujan* is actually discussing how a standing analysis handles alleged imminent injuries. Finding that such injuries must be imminent, the Court noted that allowing standing for all injuries which may happen in the future and are partly within the plaintiff's control would stretch standing beyond its "breaking point." *Id.* The injury alleged in this case is actual because it already occurred, meaning it need not be imminent. As in *Compressor*, Swetlic alleges that "Defendants' faxes used the Plaintiff's and the other class members' telephone lines and fax machine." (Doc. 1, Compl. at ¶ 34). Swetlic has standing to assert claims that Foot Levelers sent impermissible unsolicited faxes.

    **2.    Prior Business Relationship Faxes without Proper Opt-out Language**

Foot Levelers next argues that Swetlic lacks standing to assert claims based on faxes which were sent on the basis of a prior business relationship but allegedly without a proper opt-out clause. Foot Levelers argues there is no alleged harm that is traceable to the opt-out language because the harms alleged are due to the sending of the fax, which was authorized by the previous business relationship. As Foot Levelers only raised this argument in its reply, Swetlic did not have an opportunity to respond.

7

It is clear that *Imhoff* and *Compressor* do not apply with equal weight to a claim where the only alleged violation of the statute is the failure to include proper opt-out language.  The Court agrees that a failure to include proper opt-out language seems to be the type of "bare procedural harm" that the *Spokeo* court said was insufficient to confer standing.  *Spokeo*, 578 U.S. at 9–10.  However, the TCPA made it unlawful for any person to use a fax machine to send an unsolicited advertisement unless: "(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient . . . and (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)."  47 U.S.C. § 227(b)(1)(C).

While the failure to include proper opt-out language seems like only a technical violation of law, the Sixth Circuit has clarified that "unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce."  *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 544 (6th Cir. 2014) (citing *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Even a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk.") (emphasis in original)).  *Am. Copper* is clear that unsolicited fax advertisements waste time and impede commerce.  *Id.*  While the statute carved out a narrow exception to the illegality of transmitting unsolicited fax advertisements, the statute makes no differentiation in the harm caused or the penalty assessed whether a defendant fails to meet the opt-out language required or lacks permission to send the fax.  In either case, the fax is an impermissible unsolicited fax advertisement that wastes time and impedes commerce.

Accordingly, the Court is left with the allegations that Foot Levelers's impermissible faxes caused the recipients to lose paper and toner, occupied telephone lines, and cost the

recipients their time reviewing the impermissible unsolicited advertisements. (Doc. 1, Compl. at ¶ 34). Foot Levelers argues a proper opt-out would use more paper and ink and toner and waste more time. However, that ignores the basic principle that had Foot Levelers used proper opt-out language, there would be no statutory violation and thus, no damage whatsoever. To the extent Foot Levelers wishes to argue that its' opt-out language met statutory minimums; a challenge to Swetlic's standing is not the appropriate place for such an argument.[1] The Court finds that Swetlic has standing to assert the claims in the Complaint.

**B.     June Fax as an Advertisement**

Foot Levelers next moves for dismissal of any claims related to the June fax which publicized the free webinar. Foot Levelers argues that the June fax is not an advertisement because it does not offer anything for sale. Swetlic argues that the FCC has ruled that an announcement of a free seminar is an advertisement.

The TCPA provides: "[t]he term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C.A. § 227. Although helpful, the definition does not lend any clarity to the issue of whether the June fax is an unsolicited advertisement. Both Swetlic and Foot Levelers cite the FCC's most recent ruling on this issue, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3788 (2006), and the Sixth Circuit's ruling in *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.* 788 F.3d 218, 222 (6th Cir. 2015).

---

[1] Plaintiff alleges that notice "(1) is not 'clear and conspicuous,' (2) does not state a sender's failure to comply with an opt-out request within 30 days is unlawful, and (3) does not 'set forth the requirements' for the recipient to make an enforceable opt-out request, each of which are required by 47 C.F.R. § 64.1200(a)(4)(iii)." (Doc. 24, Mot. to Stay Mem. Opp. at 16–17).

The FCC's ruling "conclude[d] that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." *In re Rules*, 21 F.C.C. Rcd. at 3814.  The FCC noted that "while [a] publication itself may be offered at no cost to the fascimile [sic] recipient, the products promoted within the publication are often commercially available." Accordingly, the FCC found that "it is reasonable to presume that such messages describe the 'quality of any property, goods, or services.'" *Id.*  Further, the FCC clarified that such transmissions are different from industry news articles, legislative updates, and employee benefit information which contain only information and incidental advertisements. *Id.*

The Sixth Circuit considered the definition in the TCPA and added to it using various dictionaries.  *Sandusky*, 788 F.3d at 222.  Ultimately, the Sixth Circuit held that "[a]n advertisement is any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." *Id.*  Although it did not cite the FCC's 2006 decision, the Sixth Circuit noted that "when an orthopedic-implant manufacturer sends potential buyers a fax containing a picture of its product on an invitation to a free seminar: It is drawing the relevant market's attention to its product to promote its sale (albeit indirectly)" and accordingly, is an advertisement.  *Id.* (citing *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 489 (W.D. Mich. 2014), as amended (Jan. 12, 2015) (finding issue of fact whether reasonable fact-finder would consider a fax an advertisement which contained invitation to a free seminar)).

In this case, based on the allegations in the Complaint and the fax as presented, the Court finds that taking all inferences in favor of the Swetlic, the June fax is sufficiently alleged to be an advertisement.  First, although the largest part of the fax contains information for a webinar

regarding support staff and not Foot Levelers' products, the fax also contains information regarding free point-of-sale promotional material from Foot Levelers. Promotional materials for point-of-sale stations that could be passed on to a practice's customers falls into a type of advertisement described by the Sixth Circuit as one which "draw[s] the relevant market's attention to its product to promote its sale (albeit indirectly)." *Sandusky*, 788 F.3d at 222. It also falls directly into the FCC's statement that even when a publication is offered at no cost "the products promoted within the publication are generally commercially available . . . [thus], it is reasonable to presume that such messages describe the 'quality of any property, goods, or services.'" *In re Rules*, 21 F.C.C. Rcd. at 3814. Accordingly, Foot Leveler's Motion to Dismiss the claims relating to the June fax are **DENIED**.

**C.     Fail-Safe Class**

Having settled which claims from the Complaint should survive Foot Levelers' Motion to Dismiss, the Court must now address the class claims and allegations. First, Foot Levelers argues that the proposed class definition should be stricken from the Complaint because it is an improper fail-safe class. Swetlic argues that the class definition is only broad because there has been no discovery yet. However, recognizing that the class definition may be improper, Swetlic asks for leave to amend the Complaint in the alternative.

A fail-safe class is a class definition where it only includes those who are entitled to relief. *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). In an improper fail-safe class, "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Id.* The class definition in the Complaint is as follows:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of

11

>Defendants, and (3) which Defendants did not have prior express permission or invitation, or (4) which did not display a proper opt-out notice.

(Doc. 1, Compl. at ¶ 17). The Court agrees with Foot Levelers that the class definition in the Complaint would constitute an improper fail-safe class in any attempt to certify. The class only includes persons who either did not give permission or received a fax which did not contain a proper opt-out notice. However, the Court also agrees with Swetlic that at this early stage in the litigation, amending the class definition as Swetlic suggests is the proper course. *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014) (citing *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)) (Graham, J.). Accordingly, Swetlic will have fourteen days from the date of this order to file an amended complaint containing the proposed class definition.

### D.     Placeholder Motion

Last, Swetlic filed the Placeholder Motion to prevent a pick-off or buy-off attempt by Foot Levelers. Defendant opposed the Motion, arguing that the motion is premature[2] and that the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) obviates the need for such a motion.[3] Plaintiff argues that because of the uncertainty following *Campbell-Ewald* and the Defendant's signaled intent to compensate Plaintiff, the motion should remain pending. Although the Placeholder Motion is currently pending, Swetlic asked for and was granted relief to amend the Complaint and change the class definition. Accordingly, when

---

[2] Courts typically deny premature motions. *See Serv., Hosp., Nursing Home & Pub. Emps. Union, Local No. 47 v. Commercial Prop. Servs., Inc.*, 755 F.2d 499, 507 (6th Cir. 1985) (finding district court properly denied summary judgment motion because it was premature); *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, No. 2:08-CV-1140, 2009 WL 5216041, at *6 (S.D. Ohio Dec. 29, 2009) (striking premature motion for judgment on the pleadings) (Frost, J.).
[3] *Campbell-Ewald* held that an unaccepted Rule 68 offer of judgment does not moot a Plaintiff's class claims such that dismissal would be appropriate. 136 S.Ct. at 665.

Plaintiff amends the Complaint, the Placeholder Motion will become moot. Accordingly, the Court reserves judgment until the time period for amendment has passed.

### III.    CONCLUSION

Based on the foregoing, Foot Levelers's Motion to Dismiss, Motion to Strike, and Motion for a Stay are **DENIED**. Swetlic's request for leave to file an amended complaint is **GRANTED**. The Court orders that the Plaintiff is granted leave to amend the Complaint within fourteen days of the date of this order. Last, the Court withholds its ruling on the Placeholder Motion until the end of Plaintiff's fourteen day amendment period. The Clerk shall **REMOVE** Document 18 from the Court's pending motions list.

**IT IS SO ORDERED.**

 _/s/ George C. Smith_ 
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**